# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **Alexander Chemical Corporation,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 10 C 7656 |
| | ) |
| **G.S. Robins & Company**, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Alexander Chemical Corporation ("Alexander") sold chemicals to G.S. Robins & Company ("Robins") for 26 years, shipping the chemicals in containers. Alexander asked Robins to return the containers when through with them, collecting a deposit as security. Robins re-sold the chemicals to customers of its own and then tried to re-collect the empty containers and ship them back to Alexander.

In 2010 Robins stopped buying chemicals from Alexander. Alexander reckoned that Robins had not returned several thousand containers, and it demanded that Robins either return them or pay their replacement value. When Robins refused, Alexander filed this lawsuit.

Alexander says seven legal theories entitle it to recover from Robins for the unreturned containers. It has filed a motion for partial summary judgment as to liability, based on the theory that Robins has breached its duties as bailee of the

containers.¹  As always in this District Court, the parties have proceeded in accordance with our LR 56.1.²  For the reasons stated here, the Rule 56 motion is granted.

**Summary Judgment Standard**

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).³  For that purpose courts consider the entire evidentiary record and must view all of the evidence and draw all inferences from that evidence in the light most favorable to nonmovants (Egan Marine Corp. v. Great Am. Ins. Co. of N.Y., 665

---

¹ Alexander's complaint lists seven "counts."  Each count, however, is not a separate claim (as Rule 10(b) contemplates) but a separate legal theory that Alexander says entitles it to the same damages (NAACP v. Am. Family Mut. Ins. Co., 978 F.2d 287, 291-93 (7th Cir. 1992)).  Thus, although Alexander moves for summary judgment on just one of its "counts," this Court assumes that Alexander's motion will result in a determination of liability for Alexander's one and only claim, obviating analysis of the other six legal theories.

² LR 56.1 requires parties to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which are agreed upon.  This opinion cites to Alexander's LR 56.1 statement as "A. St. ¶--," to Robins' LR 56.1 statement as "R. St. ¶--," to Alexander's response as "A. Resp. ¶--," and to Robins' response as "R. Resp. ¶--."  Where a response does not provide a version of the facts different from the original statement, this opinion cites only that original statement.  Citations to Alexander's and Robins' memoranda and responsive memoranda take the forms "A. Mem. --", "R. Mem. --", "A. Resp.", and "R. Resp." respectively.

³ At the summary judgment stage, of course, nonmovant Robins need not "establish" or "show" or "prove" anything -- it must merely demonstrate that a genuine issue of material fact exists.  This opinion's later employment of the quoted terms is due to the cited cases' use of that terminology, but this Court imposes on Robins the lesser burden described earlier in this footnote.

F.3d 800, 811 (7th Cir. 2011)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (Carmichael v. Vill. of Palatine, Ill., 605 F.3d 451, 460 (7th Cir. 2010), quoting Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)). As Payne v. Pauley, 337 F.3d 767, 772-73 (7th Cir. 2003) has explained:

> [T]he Federal Rules of Civil procedure require the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Conclusory allegations, unsupported by specific facts, will not suffice.[4]

Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). What follows is a summary of the relevant facts, viewed of course in the light most favorable to nonmovant Robins.

---

[4] [Footnote by this Court] Lawyers (and, regrettably, judges) often lump "self-serving affidavits" into the category of submissions that are insufficient to overcome summary judgment. That blanket assertion is incorrect. Payne, 337 F.3d at 773 was careful to distinguish conclusory affidavits from merely self-serving ones:

> We hope this discussion lays to rest the misconception that evidence presented in a "self-serving" affidavit is never sufficient to thwart a summary judgment motion. Provided that the evidence meets the usual requirements for evidence presented on summary judgment -- including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial -- a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts.

3

**Factual Background**

From 1986 until 2010 Alexander sold Robins chemicals such as ammonia, chlorine, hydrogen chloride and sulfur dioxide (A. St. ¶¶7, 13). Alexander shipped those chemicals to Robins in containers (id. ¶9), which were delivered in good condition, and it included with each shipment a bill of lading that included a set of Additional Terms and Conditions (id. ¶10). Alexander asked Robins to return the containers when finished with them and required that Robins pay a deposit on each container (id. ¶¶17-18). Robins accepted each shipment and signed the accompanying bill of lading (id. ¶12).

Robins then re-sold the chemicals to its customers, shipping the chemicals in Alexander's containers (A. St. ¶27). Robins collected a deposit from some but not all of its customers, and it did not obligate any of its customers to return the containers (id. ¶28).

Alexander accounted for the containers in its internal records on a first in, first out basis (A. St. ¶25) -- that is, it treated each container returned by Robins as if it were the container that had been in Robins' possession the longest. Alexander thus kept a running total of the number of containers outstanding. When Robins returned a container to Alexander, Alexander would return the deposit that Robins had paid or issue a credit for the amount of the deposit (id. ¶23). Robins recorded the deposits that it paid to Alexander as accounts receivable, reducing that amount each time that it returned a container and received a credit for its deposit from Alexander (id. ¶26).

4

Each party thus kept its own running count of the number of containers outstanding. Representatives from Alexander and Robins met twice -- once in 1994 and again in 2000 -- to compare their counts and reconcile differences (R. St. ¶¶9, 13). There is a dispute between the parties as to some of what took place at these meetings. For its part, Robins says that at the meetings Alexander learned that Robins had a practice of "writing off" containers three years after delivery, removing the deposits from its accounts receivable and giving up the search for the containers (R. St. ¶¶5-7). But Alexander says that Robins never informed it of that accounting practice (A. Resp. ¶13). For purposes of the current motion, of course, Robins' version must be credited <u>if</u> it is properly supported by evidence.

In March 2010 Robins stopped buying chemicals from Alexander (A. St. ¶30). Alexander demanded that Robins return any containers still in its possession or pay their full replacement value (<u>id</u>. ¶31). Alexander claims that 3,195 containers are still outstanding (<u>id</u>. ¶32). Robins admits that 1,940 containers are outstanding after the containers that it wrote off are subtracted (R. St. ¶22).

**Bailment Principles and Their Application**

Alexander says that its contract with Robins established a bailment relationship. <u>Indem. Ins. Co. of N. Am. v. Hanjin Shipping Co.</u>, 348 F.3d 628, 637 (7th Cir. 2003) (internal quotation marks omitted) describes the general concept of a bailment under Illinois law[5]:

---

[5] Both Alexander and Robins assume that Illinois law applies without having undertaken a choice-of-law analysis. <u>Wood v. Mid-Valley Inc.</u>, 942 F.2d 425, 427

> A bailment is the delivery of property for some purpose upon a contract, express or implied, that after the purpose has been fulfilled, the property shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept until he reclaims it.

Illinois law establishes a presumption of negligence when a bailee fails to return property to a bailor, a presumption created by the bailor's proof of these elements (Wausau Ins. Co. v. All Chicagoland Moving & Storage Co., 333 Ill. App. 3d 1116, 1121, 777 N.E.2d 1062, 1068 (2d Dist. 2002)):

> To recover under a bailment theory, a plaintiff must establish (1) an express or implied agreement to create a bailment; (2) a delivery of the property in good condition; (3) the bailee's acceptance of the property; and (4) the bailee's failure to return the property or the bailee's redelivery of the property in a damaged condition.

Here the parties do not dispute the last three elements: Alexander delivered containers to Robins, Robins accepted them and Robins failed to return some of the containers.

As stated earlier, each shipment from Alexander included a bill of lading, which was signed by both Alexander and Robins. According to Alexander, the back of each bill of lading set out terms and conditions that included these provisions:

> 2. Purchaser/Bailee shall have exclusive responsibility for the care, maintenance, use and storage of all gas cylinders, cylinder valves, and gas delivered to its possession until such time as such gas cylinders, cylinder valves and any remaining gas are returned by

---

(7th Cir. 1991) teaches that "[c]ourts do not worry about conflict of laws unless the parties disagree on which state's law applies." This Court will accordingly honor Alexander and Robins' implicit agreement.

6

> Purchaser/Bailee to Alexander Chemical Corp. and
> Alexander Chemical Corp. acknowledges such return in
> writing.
>
> * * *
>
> 4. The Purchaser/Bailee shall be liable to Alexander
> Chemical Corp. for any damages to or for the loss of any of
> the gas cylinders or valves while they are in the
> possession of the Purchaser/Bailee.

Those provisions, says Alexander, were included throughout its relationship with Robins.

For its part Robins agrees that the additional terms appeared on the bills of lading, but it contends that they did not appear there until 2002 (R. Mem. 11). As Robins would have it, because Alexander sent containers to Robins before that year, some containers may not have been covered by a bailment agreement. According to Robins that creates a fact dispute that precludes summary judgment.

But while Alexander presents evidence that the additional terms have always been sent to Robins, Robins presents none for its contrary view. Alexander's evidence comes in two flavors. First, it offers direct evidence from two witnesses for the company -- its Controller and its President -- who say that Alexander included the additional terms from the very beginning of its relationship with Robins (A. St. Ex. B ¶12, A. St. Ex. C. ¶¶4-5). And second, it relies on its having produced many copies of the bills of lading in discovery, the oldest one dating from 2002. Nearly all

had the additional terms attached.⁶ It would surely be a reasonable inference that if Alexander had preserved pre-2002 bills of lading and produced them in discovery, they too would have had the additional terms attached.

Robins sees its opening in the failure of both parties to have retained bills of lading from the pre-2002 period. According to Robins that is "evidence" that the bills of lading did not include the additional terms until 2002 (R. Mem. 4, 11). But that argument distorts the manner in which facts are proved in courts. Take, for example, this excerpt from BASF Corp. v. Old World Trading Co., 41 F.3d 1081, 1097-98 (7th Cir. 1994) (emphasis in original), which held that testimony and inference was enough to support a factual finding at trial even in the absence of more concrete proof:

> BASF argues that testimony about the end of the relationship does not firmly establish the lack of sales in 1988. But the district court was entitled to make reasonable inferences from the record, and absent other proof of sales, the testimony reasonably supports the conclusion that there were no further sales.⁷

---

⁶ Even those copies in the document production that did not have the terms and conditions "attached" may have had them initially. Because the terms and conditions were printed on the backs of the bills of lading, it would be unsurprising if a document processor had mistakenly scanned or copied only the front page.

⁷ [Footnote by this Court] Another example is the unpublished order in United States v. Brewer, 20 Fed. App'x 539 (7th Cir. 2001). There a criminal defendant was convicted of possessing a firearm that had traveled in interstate commerce, a conviction based on (1) evidence that showed the defendant's wife owned a gun that had been made in Brazil and (2) testimony that during a robbery the defendant had brandished a gun matching the description of his wife's gun. Brewer found that evidence sufficient, noting:

Here Alexander has offered evidence that surely suffices to support a finding that the bills of lading always included the additional terms. There is certainly nothing to suggest that anything changed in that regard, either in 2002 or at any other date -- and it will be remembered that the Additional Terms and Conditions were a standard component of Alexander's standard bill of lading. Nonmovant Robins' own Rule 56 entitlement to reasonable inferences in no way supports an inference, ungrounded in any evidence at all, that both parties nonretention of pre-2002 bills of sale connoted a change in those standard forms.

In short, Robins can't create a fact dispute about the contents of pre-2002 bills of lading without some evidence -- testimonial or physical -- of what those documents contained or of some reason for a change in those contents. It has offered none, so Alexander's evidence controls.

Hence Alexander has established all four elements necessary to create a presumption of negligence. But Robins contends that even if a bailment agreement existed, it cannot be enforced. Robins restates that argument using several legal

---

> To accept Brewer's position we would have to conclude that no one may be convicted of a firearms offense unless he is arrested with the gun in his hand; otherwise one cannot exclude the possibility that the gun was manufactured in the same state in which it was possessed. But evidence need not exclude every possibility of innocence in order to support a conviction.

That logic applies here: No smoking gun -- in this case a figurative one -- is required for Alexander to prove that the earlier bills of lading also contained the Additional Terms and Conditions.

9

theories -- waiver, estoppel and statute of limitations -- but the basic thrust is the same no matter which legal theory applies: Alexander assertedly waited too long to enforce its rights and is therefore barred from seeking relief now.

It's possible that some of the containers have gone unreturned for quite some time. Alexander does not track the containers by serial number (A. St. ¶24). Instead it keeps a running tally of how many containers are outstanding, and it subtracts from that tally each time Robins returns a container (id. ¶25). So it is possible that Alexander may have sent some of the outstanding containers to Robins as far back as 1986.

Under ordinary circumstances, that would not bar Alexander's lawsuit. Ancient Illinois cases such as Kurowski v. Schurder, 198 Ill. App. 547, 548 (1st Dist. 1916) hold that when parties agree to a bailment with no specified end date, as Alexander and Robins did here, there is no breach until the bailor demands the return of its property and the bailee refuses. And the vintage of that case does not deprive it of force, for more recent cases such as A.T. Kearney, Inc. v. INCA Int'l, Inc., 132 Ill. App. 3d 655, 664-65, 477 N.E.2d 1326, 1334 (1st Dist. 1985) hold that the same rule applies to the closely analogous tort of conversion in cases when the tortfeasor acquired the property lawfully. In this instance Alexander demanded the return of the outstanding containers in 2010 and filed this lawsuit shortly after Robins refused to return them, so Alexander is not barred from seeking damages even for containers sent at the very beginning of the parties' relationship.

Robins seeks to escape from that conclusion by urging that these are not ordinary circumstances because in 1994 and again in 1999 Alexander assertedly learned that Robins would give up searching for containers that remained unreturned three years after their receipt -- and as stated earlier, Robins would then write off the deposit from its accounts receivable. According to Robins, Alexander indicated its acceptance of that practice by continuing to do business with Robins without demanding that Robins return the containers and without pursuing legal action against Robins (until now).

As Robins would have it, Alexander's "acceptance" of Robins' practice established a course of dealing in which Alexander implicitly agreed not to enforce the bailment agreement, instead accepting only the deposits as compensation for its containers. If Robins could prove to a jury that such was the parties' established course of dealing, it could establish an affirmative defense (waiver or estoppel). Although Alexander disputes Robins' account of the parties' relationship, a mere evidentiary dispute in that regard would not carry the day for Alexander, because Loudermilk v. Best Pallett Co., 636 F.3d 312, 314 (7th Cir. 2011) teaches that "the party opposing the motion [for summary judgment] gets the benefit of all facts that a reasonable jury might find."

But there is a fatal flaw in Robins' line of reasoning, because here no reasonable jury could find that the parties engaged in the course of dealing that Robins describes. Omnicare, Inc. v. United Health Group, Inc., 629 F.3d 697, 705 (7th Cir. 2011) confirms the requirement that a party produce "evidence that is

11

more than 'merely colorable'" to oppose summary judgment successfully. Although Robins argues that Alexander knew of its practice of giving up on containers after three years, it presents no admissible evidence in support of that argument. All that Robins tenders on that score is an affidavit from its former CFO that states in part:

> 8. Alexander was aware of Robins' Container accounting and return practices as early as 1994. In 1994 and 1995, representatives from Alexander and I had discussions to reconcile the respective parties' Container and deposit counts.
>
> 9. Through these discussions Alexander became aware of Robins' practice of writing off Containers, which Alexander knew were delivered to customers, from its books after three years if they could not be collected. Alexander also knew at this time that Robins would make no additional effort to collect and return these containers.

This just does not do the job. It substitutes an ipse dixit as to what Alexander was "aware of" for any evidentiary particulars of the content of the discussions that assertedly made it aware. Such an affidavit, equivalent to testimony that does "not pass the threshold requirements of admissibility at trial[,] . . . is not sufficiently probative to create a genuine issue of material fact" at the summary judgment stage (<u>Unterreiner v. Volkswagen of Am., Inc.</u>, 8 F.3d 1206, 1212 (7th Cir. 1993)). So the ex-CFO's affidavit does not help Robins to establish its affirmative defenses, even at the summary judgment stage.

Prime Eagle Group Ltd. v. Steel Dynamics, Inc., 614 F.3d 375, 378

underscores why the former CFO is not competent to testify about Alexander's knowledge:

> Corporations do not have brains, but they do have employees. One fundamental rule of agency law is that corporations "know" what their employees know -- at least, what employees know about subjects that are within the scope of their duties.

Affidavits (and testimony) set out facts, not law. Robins' former CFO could testify about what he said, heard or observed at his meetings with Alexander's employees, but the legal conclusion of what the corporation "knew" is not for him to say. His affidavit gets it backward, providing a legal conclusion without supporting facts.

To be sure, the ex-CFO might perhaps have created an inference about what Alexander knew, based on more specific testimony about what the parties said and did at the meeting. Inferences can be admissible evidence, but United States v. Fenzl, No. 11-2459, 2012 WL 576432 at *4 (7th Cir. March 7, 2012) reconfirms the Seventh Circuit's earlier holding that inferences "must be tethered to perception, to what the witness saw or heard." Robins' CFO's current statements about what Alexander knew are not tethered, nor even loosely bound, to anything that he identifies as having perceived when the parties met. His affidavit contains no statement of what he saw and heard at his meetings with Alexander's employees -- just the naked unsupported conclusion of what Alexander assertedly learned and when.

Nor can Robbins, now aware of the consequences of its inadequate presentation, attempt to rescue itself by an effort at this point to bridge the gulf of that inadequacy -- to do so by some re-creation of the ex-CFO's affidavit. For years (see, e.g., Employers Ins. of Wausau v. Bodi-Wachs Aviation Ins. Agency, Inc., 846 F. Supp. 677, 685 (N.D. Ill. 1994)) this Court has repeated a basic principle in the Rule 56 content that our Court of Appeals, in Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1270 (7th Cir. 1996), has not only endorsed but, in doing so, has expressly cited Employers and even quoted this Court's metaphoric coinage:

> A party seeking to defeat a motion for summary judgment is required to "wheel out all its artillery to defeat it."[8]

It is easy to see why that concept is sound -- there is no more reason to permit a party that has lost a summary judgment motion to offer up a different version of its opposition than there would be to permit a party, having lost at trial, to say "If I had known I was going to lose, I would have presented different (or added) evidence."[9]

---

[8] [Footnote by this Court] In its original version, Employers spoke of the party as being "duty bound" rather than the less forceful "required."

[9] Although this is far from the only justification for such a prohibition, any judge who has listened to witness testimony over a period of years is familiar with the tendency of some witnesses to engage in revisionist history, in which the witness testifies to what he or she believes must have taken place under circumstances about which he or she has a general recollection, rather than providing facts truly drawn from memory. Nor is that phenomenon necessarily a matter of deliberately reshaping the facts -- it may be the product of the human tendency described in the aphorism that "the wish is father to the thought." Either

That leaves Robins with nothing but an unsupported assertion about what Alexander purportedly knew. Zeidler v. A&W Restaurants, Inc., 301 F.3d 572, 575 (7th Cir. 2002) is one of a great many cases holding that "unsupported assertions . . . are not evidence sufficient to defeat a motion for summary judgment." Robins did not submit any evidence documenting its accounting practice. It did not submit any correspondence with Alexander documenting the three-year write-off procedure. Its one piece of correspondence in the record -- a letter documenting the reconciliation of container counts from the year 2000 -- makes no mention of that practice. With no admissible evidence of Alexander's knowledge having been tendered, Robins cannot sustain its waiver, estoppel or statute of limitations defenses. Alexander is thus entitled to summary judgment as to liability on its bailment claim.

**Damages**

Although R. Mem. and A. Rep. contained some discussion of the appropriate measure of damages for the missing containers, Alexander did not mention damages in its summary judgment motion or its A. Mem. This memorandum opinion and order therefore does not decide what amount Alexander is entitled to collect.

---

way, though, there is very good reason for not giving a witness the opportunity for a do-over after the adverse consequences of his or her initial effort are known.

**Conclusion**

Because there is no genuine dispute as to Robins having breached its duties as bailee, it is liable to Alexander for the damages resulting from its breach. Alexander's Rule 56 motion is granted. This action is set for a status hearing at 8:45 a.m. April 3, 2012 to discuss procedures looking to the quantification of Alexander's damages.

                                                 _____
                                                 Milton I. Shadur
                                                 Senior United States District Judge

Date: March 29, 2012